## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

GEORGE MOORE and VIRGINIA CARTER, )
*on behalf of themselves and* )
*all others similarly situated,* )
                                       )
        Plaintiffs, )
                                         )
        v. ) No. 4:18CV1962 RLW
                                         )
COMPASS GROUP USA, INC., )
                                         )
        Defendant. )

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Dismiss (ECF No. 25) and Motion to

Transfer Venue (ECF No. 27) filed by Defendant Compass Group USA, Inc. ("Compass").

Plaintiffs George Moore and Virginia Carter, on behalf of themselves and all others similarly

situated, oppose both motions. Both motions are fully briefed and ready for disposition.

Additionally, Compass has filed a Motion for Entry of a Protective Order with an attached

proposed order. (ECF Nos. 37 & 37-1) Plaintiffs filed a response in opposition and counter

motion for the Court to enter their alternative proposed order. (ECF Nos. 38 & 38-1)

## BACKGROUND[1]

This is a putative class action under Missouri and Illinois law. Plaintiffs George Moore

and Virginia Carter ("Plaintiffs") allege that they purchased items from Compass' vending

machines, using cards rather than cash, and were charged or had withdrawn from their accounts

more money than the prices displayed on the machines. (Pls.' Am. Class Action Compl. ¶¶ 15,

---

[1] In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint
to be true and construes all reasonable inferences most favorably to the complainant. *U.S. ex rel.
Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012); *Eckert v.
Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

17, 19, 22, 23, & 25) Specifically, they allege they were charged and additional ten cents if they did not pay with cash. (*Id.* at ¶ 26) Plaintiffs further allege that Compass did not have a sign or other indication on the vending machines that a greater amount would be charged or withdrawn if a customer used a credit, debit, or prepaid card.[2] (*Id.* at ¶¶ 16, 18, & 20)

Plaintiffs filed this putative class action asserting nine causes of action on behalf of themselves, a nationwide class, and separate Missouri and Illinois subclasses. (*Id.* at ¶ 30-32) The counts and applicable plaintiffs are as follows:

- Count I alleges breach of contract on behalf of Plaintiffs and the nationwide class;

- Count II alleges violations of the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. § 407.010 *et seq.*, by means of deception on behalf of Moore and the Missouri subclass;

- Count III alleges violations of the MMPA by means of unfair practices on behalf of Moore and the Missouri subclass;

- Count IV alleges unjust enrichment under Missouri law on behalf of Moore and the Missouri subclass;

- Count V alleges money had and received under Missouri law on behalf of Moore and the Missouri subclass;

- Count VI alleges violations of the Illinois Consumer Fraud Act (ICFA), 815 ILCS 505/1 *et seq.*, on behalf of Carter and the Illinois subclass;

- Count VII alleges conversion under Illinois law on behalf of Carter and the Illinois subclass;

---

[2] Plaintiffs allege the vending machine they used in St. Louis now displays a sign that reads: "The prices displayed on the machine are 10 cents lower than the retail price and are available on cash purchases only." (Pls.' Am. Class Action Compl. ¶¶ 26-27, ECF No. 15)

- Count VIII alleges unjust enrichment under Illinois law on behalf of Carter and the Illinois subclass; and

- Count IX alleges money had and received under Illinois law on behalf of Carter and the Illinois subclass.

Compass has moved to transfer venue of this case to the Western District of North Carolina, the district in which Compass's principal place of business is located. Compass has also moved to dismiss the nationwide class claims in Plaintiff's Amended Class Action Complaint as well as Counts IV-IX.[3] Plaintiffs are opposed to both motions. In addition, Compass has moved for the Court to issue a proposed protective order. Plaintiffs are opposed to that motion as well and have submitted their own proposed protective order for the Court's consideration.

## DISCUSSION

### I. Motion to transfer

Compass argues that the interests of justice and the convenience of the witnesses warrant transfer to the Western District of North Carolina. According to Compass, the Eastern District of Missouri has no appreciable interest in the case and Compass's principal place of business, as well as relevant documents and anticipated witnesses, are located in the Western District of North Carolina. Plaintiffs assert that Defendants are unable to meet the requirements of the statute such that the motion to transfer should be denied.

The statute governing change of venue provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts use

---

[3] Compass has filed an Answer with regard to Counts I, II, and III. (ECF No. 24)

§ 1404(a) to transfer cases "solely to promote litigation convenience and efficiency." *Eggleton v. Plasser & Theurer Export von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 589 n.3 (8th Cir. 2007). When determining whether to transfer a case pursuant to § 1404(a), courts must consider: "1) the convenience of the parties; 2) the convenience of the witnesses; and 3) the interests of justice." *Dube v. Wyeth LLC*, 943 F. Supp. 2d 1004, 1007 (E.D. Mo. 2013) (citing *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)). Whether to grant or deny a request to transfer a case under § 1404(a) is within the trial court's sound discretion. *Hubbard v. White*, 755 F.2d 692, 694 (8th Cir. 1985). "[C]ourts are not limited to just these enumerated factors, and they have recognized the importance of a case-by-case evaluation of the particular circumstances presented and of all relevant case-specific factors." *Dube*, 943 F. Supp. 2d at 1007 (citing *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010)). However, courts give great deference to a plaintiff's choice of forum, and a party requesting transfer under § 1404(a) bears the burden of demonstrating that the transfer is justified. *Anheuser–Busch, Inc. v. All Sports Arena Amusement, Inc.*, 244 F. Supp. 2d 1015, 1022 (E.D. Mo. 2002) (citation omitted). "This 'general' practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one." *In re Apple*, 602 F.3d at 913 (citation omitted).

Courts take into consideration several factors when weighing convenience and the interests of justice under § 1404(a). To evaluate the balance of convenience, district courts consider:

> (1) the convenience of the parties, (2) the convenience of the witnesses— including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Burkemper v. Dedert Corp.*, No. 4:11CV1281 JCH, 2011 WL 5330645, at \*2 (E.D. Mo. Nov. 7,

2011) (citing *Terra Int'l*, 119 F.3d at 696). In evaluating these factors, the convenience of

witnesses is the most important. The convenience of the witnesses is the "primary, if not most

important" of the convenience factors. *Anheuser-Busch, Inc. v. City Merch.*, 176 F. Supp. 2d

951, 959 (E.D. Mo. 2001) (quoting *May Dep't Stores Co. v. Wilansky*, 900 F. Supp. 1154, 1165

(E.D. Mo. 1995)).

Under the interest of justice category, the courts also consider:

(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs
to the parties of litigating in each forum, (4) each party's ability to enforce a
judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the
advantages of having a local court determine questions of local law.

*Burkemper*, 2011 WL 5330645, at \*2 (citing *Terra Int'l*, 119 F.3d at 696). Accordingly, the

Court will analyze the pertinent factors in determining Compass's motion to transfer.

Compass argues that the § 1404(a) factors heavily favor transfer because the Western

District of North Carolina is a more convenient venue for the parties. Compass argues a

plaintiff's choice of forum is given less deference in class actions. *See Silverberg v. H&R Block,*

*Inc.*, No. 4:06CV00519 ERW, 2006 WL 1314005, at \*2 n.6 (E.D. Mo. May 12, 2006) (noting

that "many courts give a plaintiff's choice of forum less deference in the context of a class action

suit"). Compass claims the only connection this case has to Missouri is that one of the named

plaintiffs, Moore, is a citizen of Missouri and both named plaintiffs "happen to have made a

small number of purchases from a Compass vending machine in St. Louis." (ECF No. 28, at 2)

North Carolina, on the other hand, is the location of Compass's principal place of business and,

thus, the location of crucial witnesses and evidence. In the context of this punitive nationwide

class action, Plaintiffs' claims relate to purchases they and class members made at Compass

vending machines across the country. Moreover, Compass maintains its headquarters in

Charlotte, North Carolina, and regional and local offices in 30 states. (Decl. of Amanda Heierman ¶ 2, ECF No. 28-1) Compass argues that fraud claims – especially those that include claims on behalf of a putative class – "naturally focus on the statements and conduct of the party who allegedly deceived the putative class members, and thus require an examination of the defendant's employees, documents, systems and similar evidence." (*Id.* at 7) *See Vanguard Mun. Bond Fund, Inc. v. Thomson Pub. Corp.*, 974 F. Supp. 1159, 1162 (N.D. Ill. 1997) ("[I]n a case of this nature—particularly with negligence and fraud alleged—the bulk of the witnesses will come from the [defendant's] offices . . . ."). Accordingly, Compass argues its actions and decisions regarding vending machine prices took place largely, if not entirely, outside of Missouri and the Western District of North Carolina is a more convenient forum for this case.

Plaintiffs contend that the factors the Court must consider weigh against transfer in this case. The Court agrees. One of the cases from this district Compass cites for its argument that Plaintiffs' choice of forum is entitled to little deference concerned a class action where the class representative did not reside in the forum district. *See Silverberg*, 2006 WL 1314005, at *2 (granting a motion to transfer venue from the Eastern District of Missouri to the Western District of Missouri because, in part, "there is no evidence that the class representatives, or even a majority of the class, reside in the Eastern District of Missouri"). Here, Moore lives in St. Louis, both Moore and Carter work in St. Louis, and the particular Compass vending machine from which they allegedly made purchases is located in St. Louis. Accordingly, this district is clearly more convenient for Plaintiffs than the Western District of North Carolina.

While Compass is correct that the convenience of the *witnesses* is the "primary, if not most important" of the convenience factors, *see Anheuser-Busch, Inc.*, 176 F. Supp. 2d at 959, Plaintiffs argue it is focused on the wrong witnesses. The witnesses Compass claims would be

inconvenienced by this case remaining in this district are all its employees.[4] Other courts in this circuit, however, have made clear that "[t]he focus is on *non-party witnesses*, since 'it is generally assumed that witnesses within the control of the party calling them, *such as employees*, will appear voluntarily in a foreign forum.'" *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014) (emphasis added) (quoting *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1138 (D. Minn. 2009)). Compass's argument that the Court should weigh this factor in favor of dismissal is unpersuasive.

Compass's argument regarding the accessibility to evidence is likewise unpersuasive. Although Compass's headquarters are located in Charlotte, North Carolina, there is no dispute that the records which will be needed in this action are either stored electronically or capable of conversion by electronic means. "The parties can exchange discovery through electronic means, thereby eliminating any inconvenience which may have, in a previous time, been a significant factor in the analysis." *Penrose v. Buffalo Trace Distillery, Inc.*, No. 4:17CV294 HEA, 2017 WL 2334983, at *3 (E.D. Mo. May 30, 2017).

---

[4] "Typically, the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *C-Mart, Inc. v. Metro. Life Ins. Co.*, No. 4:13CV00052 AGF, 2013 WL 2403666, at *3 (E.D. Mo. May 31, 2013) (internal quotation marks omitted) (quoting *Merrick Bank Corp. v. Savvis, Inc.*, No. 4:08CV00674 ERW, 2008 WL 5146660, at *3 (E.D. Mo. Dec. 8, 2008)). Compass, however, merely states in its memorandum in support of its motion that:

> Compass anticipates calling witnesses to testify as to (a) Compass's relationships with third parties that process credit card payments made at Compass vending machines; (b) information transferred to Compass from these third parties; (c) Compass's practice of offering discounts for cash transactions, and its implementation of that practice; and (d) Compass's process for resolving customer disputes.

(ECF No. 28, at 9) These claims do not meet Compass's burden.

- 7 -

The Court also finds that the nature of Plaintiffs' claims, which are based, in part, on the MMPA and Missouri common law, cautions against transferring this case to the Western District of North Carolina. "In diversity of citizenship cases, in which state law provides the substantive rules of decision, it is an advantage to have that law applied by federal judges who are familiar with the governing state law. Thus, judicial familiarity—litigating in a district of the state whose law is to govern—is mentioned as a relevant factor in many cases." Charles A. Wright & Arthur Miller, 15 Fed. Prac. & Proc. Juris. § 3854 (4th ed.).

Lastly, Compass initially pointed to a separate case filed against it making "substantially similar allegations" being litigated in the Northern District of Illinois: *Oliver v. Compass Group USA, Inc.*, No. 1:18-cv-05998. Compass suggested that, if its then-pending motion to dismiss in *Oliver* was denied, it would move to transfer that case to the Western District of North Carolina as well to "allow a single court to preside over both of these cases." (ECF No. 28, at 10) *Oliver*, however, was dismissed with prejudice by joint stipulation on August 5, 2019.[5] Accordingly, this basis for Compass's argument no longer exists.

Because of the above analysis, the Court denies Compass's Motion to Transfer Venue. Plaintiffs' choice of venue is entitled to deference, and Compass has not met its burden of showing the convenience of the parties and witnesses and the interest of justice strongly favor transfer.

## II. Motion to dismiss

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint fails to plead "enough facts to

---

[5] On August 8, 2019, Plaintiff filed a Motion for Leave to File (Proposed) Supplemental Memorandum in Response to Compass's Motion to Transfer Venue (ECF No. 41), which the Court hereby grants.

state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff).

However, "[w]here the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co.*, 524 F.3d 866, 870 (8th Cir. 2008) (citation omitted). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Id.*

### (a) Named plaintiffs' standing to bring class claims

"As an initial matter, a prerequisite to class certification is that 'it must be established that the proposed class representatives have [Article III] standing to pursue the claims as to which classwide relief is sought.'" *Chorosevic v. MetLive Choices*, No. 4:05–CV–2394 CAS, 2007 WL 2159475, at *3 (E.D. Mo. July 26, 2007) (quoting *Wooden v. Bd. of Regents of Univ. Sys. Of Ga.*, 247 F.3d 1262, 1287 (11th Cir. 2001)). "Individual Article III standing is a prerequisite for all actions, including class actions." *Id.* (citation omitted). A plaintiff has the

burden of establishing standing by demonstrating (1) an injury in fact, (2) fairly traceable to the

defendant's challenged conduct, and (3) that is likely to be redressed by a judicial decision in the

plaintiff's favor. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders

of Wildlife*, 504 U.S. 555, 559-60 (1992)).

Compass argues Plaintiffs do not have standing to assert claims on behalf of absent,

putative class members arising under or necessarily implicating the laws of states in which no

named plaintiff resides or suffered an injury. *See, e.g.*, *Insulate SB, Inc. v. Advanced Finishing

Sys., Inc.*, No. CIV. 13-2664 ADM/SER, 2014 WL 943224, at *11 (D. Minn. Mar. 11, 2014)

(quoting *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, No. CIV.

12-169, 2013 WL 5503308, at *11 (D.N.J. Oct. 2, 2013) ("[N]amed plaintiffs lack standing to

assert claims under the laws of the states in which they do not reside or in which they suffered no

injury."), *aff'd*, 797 F.3d 538 (8th Cir. 2015). Plaintiffs contend such a decision regarding

Plaintiffs' standing to bring class claims should be deferred until the class certification stage.

The legal dispute at the crux is this argument was recently addressed by the Honorable

Stephen R. Clark of this district in *Buchta v. Air Evac EMS, Inc.*, No. 4:19CV00976 SRC, 2019

WL 4468943 (E.D. Mo. Sept. 18, 2019).

> The split among the federal courts as to standing in class actions arises
> from two Supreme Court decisions: *Amchem Products, Inc. v. Windsor*, 521 U.S.
> 591 (1997) and *Ortiz v. Fireboard Corp.*, 527 U.S. 815 (1999). In *Amchem
> Products*, the district court certified a class action of plaintiffs who were exposed
> to asbestos by the defendants. 521 U.S. at 597-608. Members of the class
> objected to the adequacy of class representation and argued certain claimants
> lacked standing to sue because they had not yet suffered an injury. *Id.* The
> Supreme Court held that addressing the requirements of Rule 23 before Article III
> standing was appropriate. *Id.* at 612. "We agree that the class certification issues
> are dispositive; because their resolution here is logically antecedent to the
> existence of any Article III issues, it is appropriate to reach them first." *Id.*
> (citations, quotations, and alterations omitted). In *Ortiz*, also an asbestos
> settlement case, the Supreme Court again applied the same logic, observing that in
> cases where class certification issues are "logically antecedent to Article III

concerns and themselves pertain to statutory standing" then Rule 23 issues should be addressed first. 527 U.S. at 831.

Federal courts are split as to how to apply *Amchem* and *Ortiz*. The Eighth Circuit has not weighed in on the subject. Several district courts held named plaintiffs did not have standing for claims under the laws of states to which they have no connection, *i.e.*, the plaintiff never worked, resided, or did business in the state. *Stone v. Crispers Restaurants, Inc.*, No. 6:06-CV-1086-Orl-31KRS, 2006 WL 2850103 (M.D. Fla. Oct. 3, 2006) (Finding the plaintiff never worked in any state other than Florida so he lacked standing to bring wage claims under the laws of Alabama, Georgia, South Carolina, or Tennessee.); *Parks v. Dick's Sporting Goods, Inc.*, No. 05-CV-6590 CJS, 2006 WL 1704477 (W.D. N.Y. Jun. 15, 2006) (Finding the plaintiff lacked standing to assert state-law claims arising under the laws of other states than New York because he was never employed by the defendant anywhere other than New York.); *In re HSBC Bank*, 1 F. Supp. 3d 34, 49-50 (E.D. N.Y. 2014) (Finding plaintiffs may only assert a state claim if a named plaintiff resides in, does business in, or has some other connection to the state.); *Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2011 WL 2791331 (D. Colo. Jul. 14, 2011) (Addressing the standing issue prior to class certification and finding the plaintiff did not have standing to assert claims under the laws of states other than Colorado because the plaintiff never worked or resided in those other states.).

Other district courts have held the standing issue should not be addressed until after class certification, or that this is not a standing issue at all and should be addressed under Rule 23's commonality, typicality, and adequacy requirements. *Thomas v. U.S. Bank, N.D.*, No. 11-6013-CV-SJ-SOW, 2012 WL 12897284 at *9 (W.D. Mo. Sept. 27, 2012) (Finding the decision on class certification was logically antecedent to a determination of standing and the "prudent course to address these issues is at the class certification stage"); *Le v. Kohl's Dep't Stores, Inc.*, 160 F. Supp. 3d 1096 (E.D. Wis. 2016) (Finding the plaintiff had standing to maintain a class action under the laws of states in which he does not and/or was injured.); *Dragoslavic v. Ace Hardware Corp.*, 274 F. Supp. 3d 578, 584 (E.D. Tex. 2017) (Finding where a plaintiff resides or suffers an injury has no impact on Article III standing and should be addressed under other doctrines.); *In re McCormick & Co., Inc.*, 217 F. Supp. 3d 124, 144 (D. D.C. 2016) (Finding it is more logical to consider plaintiffs' ability to raise other state-law claims as a question of commonality, typicality, and adequacy under Rule 23, rather than as a question of standing.); *Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*, 221 F. Supp. 3d 227, 236 (D. R.I. 2016) ("The trend in the First Circuit seems to be deferring the standing analysis to the class certification stage.").

The only circuit to approach the issue, although it did not address it directly, is the Seventh Circuit. In *Morrison v. YTB International, Inc.*, the plaintiffs alleged the defendant, YTB International violated the Illinois Consumer

Fraud Act. 649 F.3d 533, 534 (7th Cir. 2011). The plaintiffs consisted of residents of Illinois and other states. *Id.* An issue arose as to the ability of the residents of other states to bring claims under the Illinois Consumer Fraud Act. The Seventh Circuit held the following:

> The district court's language was imprecise. There's no problem with standing. Plaintiffs have standing if they have been injured, the defendants caused that injury, and the injury can be redressed by a judicial decision. Plaintiffs allege that they were victims of a pyramid scheme that saddled them with financial loss, which YTB caused. The judiciary can redress that injury by ordering YTB to pay money to the victims. Nothing more is required for standing. If the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing*, though it may affect whether a class should be certified – for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be. That a plaintiff's claim under his preferred legal theory fails has nothing to do with subject-matter jurisdiction, unless the claim is so feeble as to be "essentially fictitious."

*Id.* at 536 (citations omitted). The Seventh Circuit further stated, "A federal court is the wrong forum when there is no case or controversy, or when Congress has not authorized it to resolve a particular kind of dispute. Other deficiencies in a plaintiff's claim concern the merits rather than subject-matter jurisdiction." *Id.*

*Id.* at *3-4.

The undersigned agrees with Judge Clark's well-reasoned analysis in *Buchta* and finds that the decision of class certification is logically antecedent to a determination of standing that can be best addressed through the requirements of Rule 23. Consequently, the Court will defer ruling on this issue until the class certification stage. *See Thomas*, 2012 WL 12897284, at *9 ("The Court believes the prudent course to address these issues is at the class certification stage.").

### (b) Personal jurisdiction over members of putative class

Compass next argues Plaintiff's Amended Class Action Complaint should be dismissed

to the extent it purports to state claims on behalf of putative class members with no connection to

Missouri because the Court lacks personal jurisdiction in light of the Supreme Court's opinion in

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct.

1773 (2017) (hereinafter "*BMS*"). Plaintiffs disagree with Compass's attempt to apply *BMS* – a

case concerning mass tort claims – to this putative class action and rely on a recent decision from

the undersigned.

In *Swinter Group, Inc. v. Service of Process Agents, Inc.*, No. 4:17-CV-2759 RLW, 2019

WL 266299, at *2 (E.D. Mo. Jan. 18, 2019), the Court noted that "[n]o Court of Appeals has

engaged the question of whether *BMS* requires a finding of specific personal jurisdiction with

respect to unnamed members of a putative class action suit." *Id.*

> The Court applies the reasoning of at least one other district court from the
> Eighth Circuit (and from various other districts), refusing to extend the holding
> of *BMS* to the class action context. The Court agrees that a class action
> fundamentally differs from a mass tort action, particularly based upon the
> procedural safeguards present in class actions under Fed. R. Civ. P. 23. "[I]n a
> mass tort action, each plaintiff is a real party in interest to the complaints; by
> contrast, in a putative class action, 'one or more plaintiffs seek to represent the
> rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only
> plaintiffs actually named in the complaint.'" *Molock v. Whole Foods Mkt.,
> Inc.*, 297 F.Supp.3d 114, 126 (D.D.C. 2018) (quoting *Fitzhenry-Russell v. Dr.
> Pepper Snapple Grp., Inc.*, No. 17-CV-00564 NC, 2017 WL 4224723, at *5 (N.D.
> Cal. Sept. 22, 2017). Here, there is but one "suit": the present action between the
> Swinter Group and SPA. [*Knotts v. Nissan N. Am., Inc.*, No. 17-CV05049
> (SRN/SER), 2018 WL 4922360, at *15 (D. Minn. Oct. 10, 2018)]. "While
> Plaintiff may end up representing other class members, this is different than a
> mass action where independent suits with independent parties in interest are
> joined for trial." *Morgan v. U.S. Xpress, Inc.*, No. 3:17-CV-00085, 2018 WL
> 3580775, at *5 (W.D. Va. July 25, 2018). Unlike a mass tort, Rule 23 provides
> procedural due process safeguards for class actions: numerosity, commonality,
> typicality, adequacy of representation, predominance and superiority. "Rule 23's
> procedural safeguards ensure that the defendant will be 'presented with a unitary,
> coherent claim to which it need respond only with a unitary, coherent defense.'"

*Knotts*, 2018 WL 4922360, at \*15 (quoting *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F.Supp.3d 1360, 1366 (N.D. Ga. 2018)). "Given these safeguards, due process concerns for the defendant in the class action context are far less compelling than in a mass tort such as *BMS*, where each joined plaintiff may make different claims requiring different responses." *Knotts*, 2018 WL 4922360, at \*15; *see also Morgan v. U.S. Xpress, Inc.*, No. 3:17-CV-00085, 2018 WL 3580775, at \*5 (W.D. Va. July 25, 2018) ("Due process concerns raised by that aggregation of claims are lessened in the class action context."). Because SPA must already come to this forum to litigate the claims of the Swinter, the Court finds there is little hardship, as a jurisdictional matter, for it to also litigate the nationwide class claims. Therefore, it promotes efficiency and expediency to litigate all claims at once rather than to separate the nationwide class. *See Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F.Supp.3d 1360, 1366 (N.D. Ga. 2018) ("Because of the unitary nature of that class claim, the Court perceives no unfairness in haling the defendant into court to answer to it in a forum that has specific jurisdiction over the defendant based on the representative's claim.").

*Id.* (footnote omitted).

The Court adopts its analysis in *Swinter* and, again, notes that Congress created class actions to help "overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (internal quotation marks omitted). "The Court is reluctant to believe that the Supreme Court's 'straightforward application . . . of settled principles of personal jurisdiction' in [*BMS*] requires a substantial limiting of that valuable tool." *Morgan*, 2018 WL 3580775, at \*6. Accordingly, the Court follows *Swinter* and the better-reasoned decisions declining to extend *BMS* to class actions and denies Compass's motion to dismiss as it relates to lack of personal jurisdiction.[6]

### (c) Unjust enrichment claim

Compass next argues Plaintiffs fail to state claims for unjust enrichment because they also allege the existence of express contracts. "If the plaintiff has entered into an express

---

[6] The Court notes Compass's respectful disagreement with the undersigned's conclusion in *Swinter*. However, the Court is not persuaded to abandon the reasoning it adopted just over eight months ago.

contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply, for the plaintiff's rights are limited to the express terms of the contract." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010).

Plaintiffs argue a party may assert alternative claims for breach of an express contract and equitable relief. *See Guarantee Elec. Constr. Co. v. LVC Tech., Inc.*, No. 4:05CV8949 JCH, 2006 WL 950204, at *2 (E.D. Mo. April 10, 2006). Whether a party may plead in the alternative is procedural in nature, and thus the Court will apply the law of the forum state. *See Superior Edge, Inc. v. Monsanto Co.*, Civil No. 12-2672 (JRT/FLN), 2014 WL 4414764, at *6 (D. Minn. Sept. 8, 2014) ("[T]he Federal Rules of Civil Procedure explicitly allow parties to include in their pleadings demands for alterative relief . . . ."); *Sargent v. Justin Time Transp., L.L.C.*, No. 4:09CV596 HEA, 2009 WL 4559222, at *2 (E.D. Mo. Nov. 30, 2009) ("Pleading in the alternative is clearly allowed under Federal Rule of Civil Procedure 8(e)."). Missouri law does not allow *recovery* under both an express contract and equitable theories of relief. *Level 3 Commc'ns, LLC v. Ill. Bell Tel. Co.*, No. 4:14-CV-1080 (CEJ), 2014 WL 414908, at *6 (E.D. Mo. Feb. 4, 2014). However, a plaintiff may plead alternative claims for relief in the complaint. *Id.*; *see also Superior Edge*, 2014 WL 4414764, at *6 (citations omitted) ("In reliance upon the Rule 8, federal courts in Missouri have consistently denied motions to dismiss quasi-contract claims even where the pleading also alleges the existence of an express contract."). The same is true under Illinois law. *Footprint Acquisition LLC v. Skal Beverages E., Inc.*, No. 15 C 5013, 2016 WL 147898, at *2 (N.D. Ill. Jan. 13, 2016) (citations and internal quotation marks omitted) ("Under Illinois law, recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant. However, a plaintiff can plead an unjust enrichment claim in the alternative to a breach of contract claim.").

Other courts in this district have allowed plaintiffs to plead alternative theories for unjust enrichment alongside a claim for breach of an express contract. *See, e.g.*, *Chem Gro of Houghton, Inc. v. Lewis Cty. Rural Elec. Co-op. Ass'n*, No. 2:11CV93 JCH, 2012 WL 1025001, at *3 (E.D. Mo. Mar. 26, 2012) (quoting *Owen v. General Motors Corp.*, No. 06-4067-CV-C-NKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006)) ("[T]he fact that a plaintiff cannot simultaneously recover damages for both breach of an express contract and unjust enrichment does not preclude that plaintiff from pleading both theories in her complaint.") (alteration in *Chem Gro*); *Asbury Carbons, Inc. v. Sw. Bank, an M & I Bank*, No. 4:10-CV-878 CEJ, 2011 WL 1086067, at *4 (E.D. Mo. Mar. 22, 2011) ("While unjust enrichment is often a last resort, plaintiff can submit alternate theories of recovery supported by the same actions which allegedly give rise to its breach of contract, conversion and other claims."); *cf Dubinsky v. Mermart LLC*, No. 4:08-CV-1806 (CEJ), 2009 WL 1011503, at *5 (E.D. Mo. Apr. 15, 2009), *aff'd*, 595 F.3d 812 (8th Cir. 2010) (dismissing a claim for unjust enrichment and noting the plaintiffs alleged alternative theory "seeks recovery for events arising solely out of the [contract]").

Here, Plaintiff's Amended Class Action Complaint does not explicitly state that unjust enrichment claims under Missouri and Illinois law (Counts IV and VIII respectively) are pled "in the alternative to" its breach of contract claim. However, this fact is not fatal. "The liberal policy reflected in Rule 8(d)(2) mandates that courts not construe a pleading 'as an admission against another alternative or inconsistent pleading in the same case.'" *Chem Gro*, 2012 WL 1025001, at *3 (quoting *McCalden v. Cal. Library Ass'n.*, 955 F.2d 1214, 1219 (9th Cir. 1990)). As in *Chem Gro*,

> while the unjust enrichment claim . . . is not explicitly pled in the alternative to Plaintiff's other claims, Plaintiff clearly intended its unjust enrichment claim to operate as an alternative cause of action to Plaintiff's breach of contract . . . claim[]. . . . The Court will not require hypertechnicality in pleading these claims

in the alternative and will not dismiss Plaintiff's unjust enrichment claim based on the failure to use more precise wording.

*Id.* Consequently, the Court will allow Plaintiffs to pursue alternative claims for breach of contract and unjust enrichment. Compass's motion to dismiss as it relates to Counts IV and VII is denied.

### (d) Money had and received claim

Compass likewise argues Plaintiffs claims for money had and received under Missouri and Illinois law (Counts V and IX, respectively) fail because both are equitable in nature and are incompatible with Plaintiffs' claim for breach of contract (Count I). Again, Plaintiffs counter that they are permitted to plead alternative claims under both contractual and equitable theories. The Court agrees.

Additionally, Plaintiffs argue their claims for money had and received – as well as their claims for unjust enrichment – are based on *implied* rather than *express* contracts. Under Missouri law, an express contract is one where "the parties express their promises in explicit oral or written words," as opposed to an implied-in-fact contract where the parties "manifest their promises by language or conduct which is not explicit." *Westerhold v. Mullenix Corp.*, 777 S.W.2d 257, 263 (Mo. App. E.D. 1989). Because Plaintiffs allege an implied-in-fact contract was created by their actions of purchasing items from Compass's vending machines rather than words, they contend caselaw prohibiting simultaneous claims for breach of express contract equitable claims are inapplicable to their claims for unjust enrichment and money had and received. Plaintiffs, however, fail to provide authority for this distinction. Nevertheless, the Court concludes they may proceed with their contract and equitable claims as alternative theories for the reasons explained above. Compass's motion to dismiss as it relates to Counts V and IX is dismissed.

## (e) ICFA claim

The ICFA, in relevant part, makes it unlawful to use or employ "unfair or deceptive acts or practices . . . in the conduct of any trade or commerce." 815 Ill. Comp. Stat. 505/2. Compass argues Carter's claim under the ICFA (Count VI) should be dismissed pursuant to Rule 12(b)(6) because the act does not apply to transactions that occurred outside of Illinois.

In *Avery v. State Farm Mutual Automobile Insurance Co.*, 835 N.E.2d 801, 853 (Ill. 2005), the Illinois Supreme Court observed that the Illinois state legislature "did not intend the [ICFA] to apply to fraudulent transactions which take place outside Illinois." The court noted, however, that the legislature had stated the ICFA "shall be liberally construed to effect" its purposes. *Id.* (quoting 815 ILCS 505/11a). Accordingly, the Illinois Supreme Court held "that a plaintiff may pursue a private cause of action under the [ICFA] if the circumstances that relate to the disputed transaction occur *primarily and substantially in Illinois*." *Id.* at 853-54 (emphasis added). The court further "recognize[d] that there is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case must be decided on its own facts." *Id.* at 854. "Courts consider several factors to determine whether a transaction occurred 'primarily and substantially' in Illinois . . . , including: (1) the plaintiff's residence, (2) where the misrepresentation was made, (3) where the damage to the plaintiff occurred, and (4) whether the plaintiff communicated with the defendant in Illinois." *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) (citing *Avery*, 835 N.E.2d at 853-54).

Here, Carter argues the *Avery* factors weigh in her favor. First, she is an Illinois resident. Second, she sustained damage in Illinois in the form of the allegedly excessive amount being withdrawn from her Illinois bank account. Specially, Count VI alleges Compass violated the ICFA by "*withdrawing from the accounts* of Plaintiff Carter and members of the Illinois

Subclass more than the posted prices of items they purchased from Defendant's vending machines." (Pls.' Am. Class Action Compl. ¶ 97, ECF No. 15) (emphasis added)

The Court notes that neither party has cited precedent directly on point where a court decided whether an Illinois resident could bring a claim under the ICFA based on withdrawals from an in-state bank account related to out-of-state purchases. The majority of cases the Court found dealt with applying the factors set forth in *Avery* to claims under the ICFA brought by *non-Illinois* residents. *See, e.g., Van Tassell v. United Mktg. Grp.*, LLC, 795 F. Supp. 2d 770, 781-82 (N.D. Ill. 2011) ("Applying the *Avery* test to this case, the Court concludes that the circumstances that relate to the disputed transaction did not occur 'primarily and substantially' in Illinois. First, the parties are primarily located outside of Illinois. None of Plaintiffs reside in Illinois, and of the four defendants, only United Marketing is headquartered in Illinois. . . . Second, nearly all of the conduct related to this claim occurred outside of Illinois."). Accordingly, it appears that a plaintiff's residency is the predominant factor for pursuing an ICFA claim. At this stage of the proceedings, the Court finds that Carter as an Illinois resident has stated a claim under the ICFA on behalf of herself and the Illinois subclass. Compass's motion to dismiss as it relates to Count VI is denied.

### (f) Conversion claim

Lastly, Compass argues Carter's claim for conversion under Illinois law (Count VII) fails to state a claim and should be dismissed. Under Illinois law,

> [t]he four elements of conversion are: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property.

*Mareskas-Palcek v. Schwartz, Wolf & Bernstein, LLP*, 2017 IL App (1st) 162746, ¶ 14, 90

N.E.3d 463, 467, *appeal denied*, 94 N.E.3d 656 (Ill. 2018). "The subject of conversion must be

an identifiable object of property. Generally, money is not recoverable under the tort of

conversion; however, it may be if the sum of money is capable of being described as a specific

chattel." *Cumis Ins. Soc., Inc. v. Peters*, 983 F. Supp. 787, 793 (N.D. Ill. 1997) (citation

omitted). "Illinois courts hold 'that payments to a defendant of a specific, identifiable amount[ ],

kept separate from a general fund, can constitute conversion." *McNichols v. Weiss*, No. 18 C

2125, 2018 WL 5778413, at *7 (N.D. Ill. Nov. 2, 2018) (alteration in original).

Here, Compass argues Carter has not sufficiently alleged that it exercised control over a

specific and identifiable sum of money rightfully belonging to her. Further, Carter has not

pleaded that she made any prior demand for the return of the allegedly converted property.

Carter, on the other hand, argues she has alleged a specific and identifiable sum of money by

pleading thirty specific instances in which Compass allegedly withdrew more funds than it was

authorized to do by charging ten cents more than the listed item prices on Compass's vending

machine. (Pls.' Am. Class Action Compl. ¶¶ 22-23, ECF No. 15) Carter also argues the demand

element only applies where the defendant *rightfully* came into possession of the subject property.

*See Claeys v. Vill. of Brookfield*, No. 03 C 3676, 2004 WL 2124621, at *11 (N.D. Ill. Sept. 22,

2004) (quoting *Landfield Fin. Co. v. Feinerman*, 279 N.E.2d 30, 33 (Ill. App. Ct. 1972) ("Under

Illinois law, 'one who knowingly takes possession of personal property which belongs to another

is liable to the person whose property has been appropriated whether or not a demand is made for

the return of such property.'").

The Court finds that Carter has failed to plead a claim for conversion under Illinois law.

In Count VII, Carter alleges she "was deprived of her interest in the money in her account . . . by

[Compass's] unauthorized acts of taking more from her account than the price of the items she purchased as shown on [Compass's] vending machines." (Pls.' Am. Class Action Compl. ¶ 104) Rather than plead a specific, identifiable amount of money, she merely claims she "suffered damages due to that conversion in the amount that [Compass] improperly withdrew from her accounts." (*Id.* at ¶ 107) The list of thirty specific instances is also unhelpful as Carter explicitly notes it is not an exhaustive list. (*Id.* at ¶ 23) ("*Among those instances* are those shown in the following list, with the date of purchase and the amount [Compass] withdrew from Plaintiff Carter's account . . . .") This non-exhaustive list is insufficient under Illinois law. *See also Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1145 (E.D. Mo. 2015) (quoting *Citimortgage, Inc. v. K. Hovnanian American Mortg., L.L.C.*, No. 4:12CV01852–SNLJ, 2013 WL 5355471, at *2 (E.D. Mo. 2013) ("Plaintiffs cannot, as they attempt to do here, 'recast what amounts to a claim for damages into a claim for conversion.'"). Accordingly, Compass's Motion to Dismiss is granted as it relates to Count VII.

## III. Motion for protective order

In addition to the motion to dismiss, Compass has filed a Motion for Entry of a Protective Order. (ECF No. 37) Pursuant to Rule 26(c)(1), Compass moves for the Court to enter the attached proposed protective order.[7] (ECF No. 37-1) According to Compass, counsel for the parties have conferred in good faith on this matter but have been unable to reach an agreement on one specific provision. Paragraph 7(c) of Plaintiffs' proposed protective order provides:

Except with the prior written consent of the designating party or prior order of the court, designated Highly Confidential Information may only be disclosed to the following persons:

---

[7] Plaintiffs note Compass' motion references an attached "Agreed Protective Order," and its proposed protective order asks that the Court grant the parties' "joint request"; however, Compass' proposed protective order is not agreed to. Plaintiffs and the Court assume this was simply a typographical error.

. . .

(7) Any potential, anticipated, or actual fact witness and his or her counsel, but only to the extent such confidential documents or information will assist the witness in recalling, relating, or explaining facts or in testifying, and only after such persons have completed the certification contained in Attachment A.

(ECF No. 38-1, at 5-6) Compass believes that this proposed provision would allow disclosure of Highly Confidential information without prior notice and grants broad discretion to Plaintiffs' counsel to disclose such information to virtually anyone for any reason. Plaintiffs, on the other hand, believe the restrictions in paragraph 7(c)(7) are sufficient parameters to protect Compass's confidential business interests, including the requirement that any such witness signed a certification acknowledging the confidentiality provisions. Plaintiff's response to Compass's motion is also a Counter Motion for Entry of Plaintiffs' Proposed Protective Order that includes paragraph 7(c)(7). (ECF No. 38)

The Court agrees with Plaintiffs and will issue their Proposed Protective Order (ECF No. 38-1) subsequent to this Memorandum and Order. The safeguards in paragraph 7(c)(7) and the confidentiality acknowledgement in the accompanying certification are sufficient to protect Compass's legitimate business interests.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File (Proposed) Supplemental Memorandum in Response to Defendant's Motion to Transfer (ECF No. 41) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Compass Group USA, Inc.'s Motion to Transfer Venue (ECF No. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Compass Group USA, Inc.'s Motion to Dismiss (ECF No. 25) is **GRANTED, in part,** as it relates to Plaintiffs' claims for conversion

under Illinois law, and **DENIED, in part,** as it relates to the other arguments. Consequently, Count VII is **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendant Compass Group USA, Inc. is reminded of its obligation to answer or otherwise respond to Counts IV, V, VI, VIII, and IX within the time set by the rules.

**IT IS FURTHER ORDERED** that Defendant Compass Group USA, Inc.'s Motion for Entry of a Protective Order (ECF No. 37) is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiffs' Counter Motion for Entry of Plaintiffs' Proposed Protective Order (ECF No. 38) is **GRANTED**, and the Court will issue the protective order subsequent to this Memorandum and Order.

Dated this 26th day of September, 2019.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**